**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

INDIANAPOLIS FRUIT CO.,

    Plaintiff,

                                                  Case No. 10-14070
v.                                                   Hon. Lawrence P. Zatkoff

LOCAVORE FOOD DISTRIBUTORS, INC.,
and ERIC HAHN,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 20, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment [dkt 17]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is [dkt 17] is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

**A. FACTUAL BACKGROUND**

Plaintiff Indianapolis Fruit Company, Inc. ("Plaintiff") sells perishable agricultural

commodities ("Produce"). Such Produce consists of fresh fruits and vegetables subject to the provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C § 499a, *et seq*. Plaintiff sold Produce to Defendant Locavore Food Distributors, Inc. ("Locavore"). Locavore is a Michigan company that supplies fresh fruit and vegetables to local schools. Defendant Eric Hahn ("Hahn") owns all of the shares of Locavore, is the President of Locavore, and directs the operations of Locavore.

Early in 2010, Locavore entered into a contract with Detroit Public Schools ("DPS") to provide Produce for DPS's lunch program. Locavore received the Produce it supplied to DPS from Plaintiff. During the period from March of 2010 to June of 2010, Locavore then supplied DPS with the requested Produce. Plaintiff asserts that Locavore failed to pay Plaintiff for Produce delivered from March 24, 2010, to June 7, 2010. Plaintiff now seeks to recover this unpaid balance from Defendants by invoking the statutory trust provisions under PACA.

**B. STATUTORY BACKGROUND**

Congress enacted PACA to regulate the commercial trade of Produce between Produce sellers and buyers. PACA provides civil liabilities to Produce sellers against buyers who fail to make full payment on purchased Produce. 7 U.S.C. § 499e(a). In 1984, Congress amended PACA to create a statutory trust for unpaid sellers of Produce. *See Overton Distribs. v. Heritage Bank*, 340 F.3d 361, 364–65 (6th Cir. 2003). Specifically, PACA provides:

> [Produce] . . . and all inventories of food or other products derived from [Produce], and any receivables or proceeds from the sale of such [Produce], shall be held by such . . . dealer[] or broker *in trust for the benefit* of all unpaid suppliers or sellers . . . *until full payment of the sums owing* in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2) (emphasis added); *see Overton*, 340 F.3d at 364–65. The trust becomes

effective at the time a Produce buyer first begins accepting shipments of Produce from a Produce seller and continues until the Produce seller has been paid. 7 U.S.C. § 499e(c). The Produce buyer, as trustee, holds its Produce-related assets in trust as a fiduciary until full payment is made to the unpaid Produce seller, *i.e.*, the trust beneficiary. *Id.* A Produce buyer's unpaid obligation "becomes a trust obligation . . . , prior to and superior to any lien or security interest in inventory held by the [buyer's] secured lender." *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010, 1012 (6th Cir. 1993) (quoting *In re Prange Foods, Corp.*, 63 Bankr. 211, 214 (Bankr. W.D. Mich. 1986).

### C. PROCEDURAL BACKGROUND

On October 12, 2010, Plaintiff filed a three-count Complaint, asserting that Defendants owe Plaintiff $49,229.21, of which $48,398.86 is covered by the PACA trust, plus interest and attorneys' fees. Specifically, Count I seeks enforcement of the PACA trust, Count II asserts a breach of contract, and Count III asserts against Hahn a breach of the fiduciary duties to PACA trust beneficiaries such as Plaintiff. On June 10, 2011, Plaintiff filed the instant Motion for Summary Judgment. In Plaintiff's Motion, Plaintiff requests that this Court:

> (1) grant Plaintiff's Motion for Summary Judgment;
>
> (2) find that Hahn's trust obligations to Plaintiff are not dischargeable under §523(a)(4) of the Bankruptcy Code; and
>
> (3) enter judgment in favor of Plaintiff against Locavore and Hahn in the amount of $49,229.21, of which $48,398.86 is covered by the PACA trust, plus additional pre-judgment interest and attorneys' fees.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language

of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. ANALYSIS

**A. LOCAVORE IS A "DEALER"**

Plaintiff argues that it is entitled to summary judgment as to the amount that Locavore owes Plaintiff under the PACA trust for failing to pay for the Produce identified in the invoices submitted to the Court. Locavore disputes that PACA is applicable to this action because it asserts that it fails to satisfy the definition of "Dealer" under PACA.[1]

Pursuant to PACA, in order for an entity to be subject to the PACA trust, it must meet the definition of "Dealer." "Dealer" is defined as an entity "in the business of buying or selling in wholesale or jobbing quantities in commerce." 7 U.S.C. § 499a(b)(6); 7 C.F.R. § 46.2(m). "Wholesale or jobbing quantities" means the "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R § 46.2(x). An entity found to be a PACA "Dealer" is subject to liability under PACA section 499b, which makes the failure to maintain the assets of the PACA trust unlawful conduct. 7 U.S.C. § 499e(a). The "Dealer" will be liable for the full amount of damages sustained by the unpaid Produce seller. *Id.*

Despite Locavore's argument that it did not purchase 2,000 pounds or more of Produce in any given day from Plaintiff until June 1, 2010, Locavore ignores its prior purchases of 2,000 pounds or more from Produce growers other than Plaintiff on any given day. According to Friske Orchards' Invoice No. 8899 and the Affidavit of Richard W. Friske, as of April 10, 2009, Locavore

---

[1] Defendants, however, do not dispute Plaintiff's assertions that it operated under a valid PACA license, and that its invoices contained the required statutory language and were sent to Defendants within the statutory time limits to preserve Plaintiff's PACA trust benefits. Thus, for purposes of this Opinion and Order, the only issue before the Court is whether Locavore is a "Dealer" within the meaning of PACA.

purchased 2,210 pounds from Friske Orchards. This purchase occurred 11 months prior to Plaintiff's first allegedly unpaid invoice. Under PACA, a produce buyer is a "Dealer" in "any day" that it buys or sells 2,000 pounds or more of Produce. *See* 7 C.F.R. § 46.2(m), (x). Thus, Locavore is a "Dealer" within the meaning of PACA.

Furthermore, according to Plaintiff's Invoice Nos. 683413 and 684075, Locavore purchased 3,832 pounds and 2,310.5 pounds, *i.e.*, 2,000 pounds or more, as of June 2, 2010. As such, the Court finds that Locovare meets the definition of a "Dealer" under PACA and that a PACA trust applies to Plaintiff's unpaid invoices regarding the Produce sold to Locovare. Therefore, the Court grants Plaintiff's Motion for Summary Judgment with respect to PACA applying to this action.

## B. HAHN'S INDIVIDUAL LIABILITY

Plaintiff also asserts that Hahn is a trustee of the PACA trust, and therefore should be held liable for the balance remaining on Locavore's account as the trustee. Defendants refute Plaintiff's assertion on two grounds: (1) Hahn cannot be held individually liable as a trustee for an amount greater than the net proceeds from the sale of Produce to DPS, which is $28,632.75; and (2) whether Hahn breached his duty of care and skill as a man of ordinary prudence in dealing with the PACA trust is a question of fact.

As stated above with respect to Locavore, a PACA "Dealer" is subject to liability under PACA section 499b. If deemed a PACA "dealer," "an individual is liable for his own acts, omissions, or failures while acting for or employed by any other dealer." *Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280, 282–83 (9th Cir. 1997) (quoting *Frio Ice v. Sunfruit, Inc.*, 724 F. Supp. 1373, 1381–82 (S.D. Fla. 1989)). A court determining the liability of an individual associated with a corporate defendant may look at " the closely-held nature of the corporation, the individual's active

management role and any evidence of the individual's acting for the corporation." *Id.*

> An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. . . . [A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier.

*Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D. N.Y. 1993). Even if the individual associated with a corporate defendant is found liable, PACA liability attaches first to the corporate defendant. *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F. Supp. 703, 706 (E.D. Pa. 1994). If the corporate defendant's assets are "insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Id.*

The Court finds that Defendants' arguments with respect to limiting Hahn's liability to the net proceeds from the sale of the Produce and whether Hahn breached his duty of care in dealing with the PACA trust benefits are irrelevant. In reviewing the applicable law, the courts neither focus on the net proceeds obtained from the Produce nor the individual's duty of care and skill as a man of ordinary prudence in determining an individual's personal liability. *See Sunkist Growers*, 104 F.3d at 282–83; *Shepard*, 868 F. Supp. at 706. Rather, the courts focus on the individual's association with the corporate defendant. *See Id.* The Court therefore turns to analyze the evidence that shows Hahn's association with Locavore.

According to Locavore's interrogatory responses, Hahn owns all of the shares of Locavore, is the President of Locavore, and directed the day-to-day operations of Locavore. Hahn also is involved in the financial affairs of Locavore, including signing checks, signing a personal guaranty for a corporate loan made to Locavore, and possessing the authority to make payments on invoices

received on Produce.  Thus,  Hahn is an individual who is in the position to control the PACA trust assets.  As a PACA trustee, Hahn was charged with the duty to safeguard the PACA trust assets and maintain the trust in such a manner as to ensure there are sufficient assets to satisfy all PACA trust obligations, such as that owed to Plaintiff.  7 U.S.C. §§ 499a(b)(9), 499e(c)(2).

Notwithstanding that, the applicable law holds that Hahn is liable only if Locavore has insufficient assets to satisfy all of the outstanding PACA trust obligations.  *See Shepard*, 868 F. Supp. at 706.  Although the Court finds that Hahn may be held secondarily liable, Plaintiff has presented no evidence that Locavore has insufficient PACA trust assets to pay the PACA trust obligations.  Rather, it appears to the Court that Locavore disputes the balance owed on its account with Plaintiff.  As such, the Court denies Plaintiff's Motion for Summary Judgment with respect to finding Hahn personally, jointly and severally, or secondarily liable for the PACA trust obligations owed to the PACA trust beneficiaries.

## C. THE AMOUNT DUE TO PLAINTIFF UNDER PACA

Having determined that PACA applies to this action, Plaintiff argues that no genuine dispute exists that Plaintiff is owed an amount of $49.229.20, including $48,398.86 covered by the PACA trust.  Plaintiff presents eleven invoices to the Court supporting this amount, along with a chart summarizing the invoices.  In response, Defendants dispute Plaintiff's alleged amount remaining due on the account based on: (1) Plaintiff's assuring Locavore that it would credit Locavore's balance for Produce that Locavore reported as damaged or defective; and (2) despite Locavore's requests, Plaintiff's providing no documentation indicating that Plaintiff credited the damaged Produce to Locavore's account or properly applied the payments that Locavore made to Plaintiff. Locavore also has provided the Court with photographs that purportedly depict the damaged or

defective Produce.

In Plaintiff's reply brief, Plaintiff argues that several of the checks Locavore states were payed against the outstanding invoices are either for invoices not included in Plaintiff's claim or that the checks were returned for non-sufficient funds ("NSF"). Plaintiff also claims that Locavore was required to reject defective Produce within 12 hours of its arrival, which Locavore failed to do. Plaintiff further disputes Locavore's photographs depicting damaged Produce.

In the present case, it appears to the Court that Plaintiff properly preserved its rights as a beneficiary of the PACA trust imposed on the Produce that Plaintiff sold to Locavore, including all proceeds and products derived from the Produce. The Court, however, finds that a genuine dispute of fact exists as to the actual amount that Locavore owes to Plaintiff under the PACA trust.

First, with respect to damaged or defective Produce, Locavore has presented evidence showing correspondence between Hahn and Domingo Escamilla, Plaintiff's Director of Operations, that Plaintiff would credit Locavore's account for damaged or defective Produce. Locavore's photographs also depict the purported damaged or defective Produce shipped by Plaintiff to DPS. In opposition, Plaintiff has presented the Affidavit of Beth Mouzin, who is an employee of Plaintiff that is responsible for monitoring Locavore's account with Plaintiff. Mouzin declares that Locavore's account has been credited for any payments made against it. Mouzin, however, states nothing regarding whether Locavore's account was credited for damaged or defective Produce. Plaintiff provides no other evidence that indicates Locavore's account was credited for damaged or defective Produce. According to the chart summarizing Plaintiff's invoices, it appears to the Court that Invoice Nos. 661796, 683413, 686196, and 684075 have a current balance less than the original invoiced amount. The total amount of unexplained credits equals approximately $3,700. The chart,

however, fails to explain why these four invoiced amounts were reduced, such as for crediting Locavore's account for damaged or defective Produce. Plaintiff also disputes that Locavore's photographs depict Plaintiff's Produce, however, at this juncture the Court may not weight the credibility of the evidence. Thus, a reasonable jury could find that the amount Plaintiff alleges is due does not include credits for the damaged or defective Produce depicted in Locavore's photographs.

Second, with respect to payments made to Plaintiff by Locavore, Plaintiff has provided the Court with the eleven invoices that it asserts Locavore failed to pay, totaling $49,229.21. The eleven invoices cover transactions that occurred from March 24, 2010, to June 7, 2010. Plaintiff also has provided a chart summarizing the invoice amounts and the current balances on each invoice. To oppose Plaintiff's assertion that $49,229.21 is still due on these invoices, Locavore provides the Court with evidence that it made payments to Plaintiff in the amount of $42,842.72 during the period from March 24, 2010, to June 3, 2010. Although Plaintiff contends that Locavore's checks were returned as NSF, Plaintiff only provides the Court with two such checks, totaling $12,889.70. Thus, even subtracting $12,889.70 from the amount Locavore asserts it paid Plaintiff, there is still a genuine dispute as to the amount that Plaintiff asserts is due. The record fails to show the entire history of Locavore's account that depicts whether credits for payment and credits for damaged or defective Produce were made to Locavore's account. Thus, a reasonable jury could find that the amount Plaintiff alleges is due fails to account for the payments that Locavore made to Plaintiff. As such, for the reasons stated, the Court denies Plaintiff's Motion for Summary Judgment as to Plaintiff's assertion that Locavore owes $49,229.21.

**D. NON-DISCHARGEABLE DEBT IN BANKRUPTCY**

Plaintiff also seeks a determination that the debt Hahn owes as trustee of the PACA trust is non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(4). Defendants respond that Plaintiff has provided no evidence that Hahn has filed for bankruptcy. The Court agrees with Defendants. Plaintiff does not present any evidence that Hahn has filed for bankruptcy. Furthermore, as the Court stated above, it declines to find Hahn liable for the PACA trust obligations owed to Plaintiff because Plaintiff has failed to show that Locavore is unable to satisfy such obligations. Accordingly, the Court denies Plaintiff's request to determine that the debt purportedly owed by Hahn is non-dischargeable in bankruptcy.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [dkt 17] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff  
LAWRENCE P. ZATKOFF  
UNITED STATES DISTRICT JUDGE

Dated: September 20, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 20, 2011.

S/Marie E. Verlinde  
Case Manager  
(810) 984-3290